### MOON *v.* FINK *et al.*, receivers.

FISH, J. Though the fact that the plaintiff's husband was killed by the running of the defendants' train raised against them the presumption of negligence, this presumption was rebutted by the plaintiff's evidence, and therefore the granting of the nonsuit was right.

*Judgment affirmed. All the Justices concurring.*

Argued April 13, — Decided June 9, 1897.

Action for damages. Before Judge Henry. Floyd superior court. January term, 1896.

Mrs. Moon sued the receivers of the E. T., V. & G. Railway Co., for the homicide of her husband. A nonsuit was granted,

and she excepted. The following facts appear from the testimony: The E. T. (defendants') railroad and the C., R. & C. railroad cross each other about a quarter of a mile from the spot where Moon was standing on the first named, when he was struck by the engine and killed. After so crossing, the railroads turn so as to run parallel and about fifty feet apart at the place where Moon was struck, with a clump of bushes between them. Between said crossing of the railroad-tracks and the place of the homicide they cross a public road (the place being in the country about four miles from the city of Rome), which road is about 300 yards from where Moon was standing on defendants' track, with his back to the train that killed him. This was a freight-train of about twelve cars. He was apparently watching another freight-train on the C., R.. & C. track. This was the first to pass over the crossing of the railroad-tracks and as soon as it did so, defendants' train (which had come to a full stop) immediately moved over the crossing. Both trains blew for the public road crossing, and then began to blow what was called the whippoorwill, that is, blowing in response to each other. The witness who testified as to this could not say that they were racing, but considered that they were running about 25 or 30 miles an hour. The C., R. & C. train had to run round a longer distance than the E. T. Moon was standing at or near the mouth of a cut which was curved and about twelve feet high. Had he been looking in the direction from which the E. T. train was coming, he could have seen its approach in time to have left the track before it reached him, and before the engineer thereof could have seen him; and the testimony indicates that the train, at the speed at which it was running, could not have been stopped, after the engineer did or could see him, in time to avoid striking him. The part of the railroad where he was standing had been used by people for a walkway for years. He had lived about a quarter of a mile distant, for a considerable period of time. On the preceding day he had obtained permission from one Mitchell to get a few discarded cross-ties that had been taken out of the track in this vicinity. It is a dangerous place where he was killed. There is a rough path that a man could travel going towards Rome; if the pub-

lic road were followed, it would be necessary to wade the creek, instead of walking over the railroad-trestle which crossed it, this trestle being about forty feet long, followed immediately by the entrance into the cut. There was testimony as to Moon's age, occupation, earnings, etc.

*Fouche & Fouche*, for plaintiff.

*Shumate & Maddox* and *Hoskinson & Harris*, for defendants.